# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA
### CASE NO.

RENADE GRANT,

      Plaintiff,

v.

ONEWEST BANK, F.S.B.,

      Defendant.

_____/

## COMPLAINT

Plaintiff Renade Grant ("Plaintiff") files this Complaint against Defendant OneWest Bank, F.S.B. ("Defendant" or "OneWest") and alleges as follows:

## NATURE OF ACTION

1.    Defendant violated the Telephone Consumer Protection Act and the Florida Consumer Collections Practices Act by placing hundreds of phone calls to Plaintiff's cellular phone using an automatic telephone dialing system or pre-recorded or artificial voice.

2.    Plaintiff alleges a violation of his fundamental rights under the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq. ("TCPA"). Defendant used an automatic telephone dialing system or pre-recorded or artificial voice ("automated dialing system") to repeatedly call Plaintiff's cellular phone, which is a per se violation of the TCPA. 47 U.S.C. § 227(b)(1)(A)(iii).

3.    Plaintiff also alleges violations of the Florida Consumer Collection Practices Act ("FCCPA"). Fla. Stat. §§ 559.55-559.785.

## JURISDICTION AND VENUE

4.    This Court has jurisdiction under 28 U.S.C. § 1331, 47 U.S.C. §227, and pursuant to 28 U.S.C. § 1367 for pendent state law claims. Venue in this District is proper because Plaintiff

resides here and Defendant placed telephone calls to Plaintiff in this District.

## PARTIES

5.      Plaintiff Renade Grant is a natural person and citizen of the State of Florida, and a resident of Broward County, Florida.

6.      Defendant OneWest Bank, F.S.B. is a corporation or unincorporated business entity doing business in the State of Florida and elsewhere. IndyMac is a division of OneWest. OneWest maintains a principal place of business at 7700 West Parmer Lane, Austin, Texas 78729. Its business consists in whole or in part in the arranging, making, and servicing of mortgage loans.

## FACTUAL ALLEGATIONS

7.      On December 20, 1991, Congress enacted the TCPA to govern and restrict telemarketing activities conducted via phone and facsimile. Congress passed the Act based, in part, on the following findings:

(a)     The use of the telephone to market goods and services to the home and other businesses is now pervasive due to the increased use of cost-effective telemarketing techniques.

(b)     Over 30,000 businesses actively telemarket goods and services to business and residential customers.

(c)     More than 300,000 solicitors call more than 18,000,000 Americans every day.

(d)     Total United States sales generated through telemarketing amounted to $435,000,000,000 in 1990, a more than four-fold increase since 1984.

(e)     Unrestricted telemarketing, however, can be an intrusive invasion of privacy and, when an emergency or medical assistance telephone line is seized, a risk to public safety.

(f)     Many consumers are outraged over the proliferation of intrusive, nuisance calls to

their homes from telemarketers.

(g)   The U.S. Constitution does not prohibit restrictions on commercial telemarketing solicitations.

(h)   Individuals' privacy rights, public safety interests, and commercial freedoms of speech and trade must be balanced in a way that protects the privacy of individuals and permits legitimate telemarketing practices.

(i)   Evidence compiled by the Congress indicates that residential telephone subscribers consider automated or prerecorded telephone calls, regardless of the content or the initiator of the message, to be a nuisance and an invasion of privacy.

(j)   Technologies that might allow consumers to avoid receiving such calls are not universally available, are costly, are unlikely to be enforced, or place an inordinate burden on the consumer.

(k)   Banning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion.

(l)   Businesses also have complained to the Congress and the Federal Communications Commission that automated or prerecorded telephone calls are a nuisance, are an invasion of privacy, and interfere with interstate commerce.

Section 2 of Pub. L. 102-243 (Congressional Statement of Findings).

8.   As explained by The United States Supreme Court:

"Unrestricted telemarketing," Congress determined, "can be an intrusive invasion of privacy." TCPA, 105 Stat. 2394, note following 47 U.S.C. § 227 (Congressional Findings) (internal quotation marks omitted). In particular, Congress reported, "[m]any consumers are outraged over the proliferation of

intrusive, nuisance [telemarketing] calls to their homes." *Ibid.* (internal quotation marks omitted). "[A]utomated or prerecorded telephone calls" made to private residences, Congress found, were rightly regarded by recipients as "an invasion of privacy."

*Mims v. Arrow Financial Services, LLC*, 132 Sup. Ct. 740, 745 (2012)(citations omitted).

9.      Plaintiff has a mortgage that was arranged, made and/or serviced by IndyMac Mortgage Services, a division of OneWest Bank.

10.     Defendant began incessantly calling Plaintiff's cellular phone, using an automatic telephone dialing system or pre-recorded or artificial voice. Defendant commenced such phone calls in 2008.

11.     OneWest's automated dialing system called Plaintiff's cellular phone numerous times on individual dates in an attempt to collect a purported debt from Plaintiff.

12.     On April 23, 2008, Plaintiff sent a letter to Defendant, instructing Defendant to stop calling his cellular telephone. A true and correct copy of this letter is attached as **Exhibit "A"**.

13.     Despite Plaintiff's clear instructions not to call his cellular telephone, Defendant continued to call Plaintiff's cellular telephone from 2008 through present.

14.     In July 2015, OneWest commenced another campaign of using its automated dialer system to initiate repeated phone calls to Plaintiff's cellular phone. For example, these calls included, but are not limited to the following:

| Date of Calls | Number of Calls |
|---|---|
| April 15, 2015 | 1 |
| July 17, 2015 | 1 |
| July 20, 2015 | 1 |
| July 21, 2015 | 1 |

| July 24, 2015 | 1 |
|---|---|

15.    On or about July 24, 2015, OneWest again called Plaintiff's cellular phone using an automatic telephone dialing system. During this call, Plaintiff instructed OneWest to stop calling Plaintiff's cell phone. Defendant's representative requested that Plaintiff submit something in writing, requesting that he stop making calls. Plaintiff advised Defendant's representative that he had previously provided written instruction to OneWest to stop calling him. In response, OneWest's representative explained that OneWest's automated dialer would not stop calling based on Plaintiff's verbal request that OneWest stop calling.

16.    True to its word, and even though Plaintiff revoked any consent to call his cell phone, OneWest again commenced another campaign of placing an excessive and harassing volume of phone calls, using an automated dialing system, to Plaintiff's cell phone. The campaign began on December 30, 2015, and examples of calls OneWest initiated to Plaintiff's cell phone use an automated dialing system include the following:

| Date of Calls | Number of Calls |
|---|---|
| July 28, 2015 | 8 |
| July 29, 2015 | 7 |
| July 30, 2015 | 4 |
| July 31, 2015 | 2 |
| August 3, 2015 | 2 |

17.    During the time period of August 7, 2011 to August 7, 2015, OneWest initiated **dozens of** calls to Plaintiff's cellular telephone using an automated dialing system.

18.   Plaintiff did not at any time after April 23, 2008, give express consent to OneWest to call his cell phone using an automatic telephone dialing system or pre-recorded or artificial voice.

19.   Defendant's initiation of these phone calls to Plaintiff, using an automatic telephone dialing system or a pre-recorded or artificial voice, is a per se violation of the TCPA.

20.   Defendant's continued calling of Plaintiff's cellular phone after being specifically instructed to stop was a willful and/or knowing violation of the TCPA.

21.   None of Defendant's telephone calls placed to Plaintiff were for "emergency purposes" as specified in 47 U.S.C § 227 (b)(1)(A).

<u>**COUNT I**</u>
<u>**VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT**</u>

22.   Plaintiff repeats the allegations set forth in paragraphs 1 through 26 above as if fully restated herein.

23.   Defendant, or others acting at its request, placed non-emergency telephone calls to Plaintiff's cellular telephone using an automatic telephone dialing system or pre-recorded or artificial voice in violation of 47 U.S.C § 227 (b)(1)(A)(iii).

24.   Defendant knowingly and intentionally violated the TCPA by placing phone calls to Plaintiff's cellular phone using an automatic telephone dialing system or pre-recorded or artificial voice after being instructed to stop.

**WHEREFORE**, Plaintiff requests that this Court enter judgment in favor of Plaintiff and against Defendant for:

a. Damages;

b. A declaration that Defendant's calls violate the TCPA;

    c. A permanent injunction prohibiting Defendant from placing non-emergency calls to Plaintiff's cellular telephone using an automatic telephone dialing system or pre-recorded or artificial voice; and

    d. Such other or further relief as the Court deems proper.

## COUNT II
## VIOLATIONS OF FLORIDA CONSUMER PROTECTION PRACTICES ACT

25.   Plaintiff repeats the allegations set forth in paragraphs 1 through 26 above as if fully restated herein.

26.   This is an action for damages for violation of the Florida Consumer Collection Practices Act ("FCCPA). Fla. Stat. §§ 559.55-559.785.

27.   The volume and frequency of phone calls initiated by Defendant to Plaintiff's cellular phone could reasonably be expected to, and did, harass Plaintiff.

28.   Defendant's initiation of a substantial volume of phone calls to Plaintiff's cell phone, initiated during working hours, and even after Plaintiff specifically instructed Defendant to stop calling her during work hours, could reasonably be expected to, and did, harass Plaintiff.

29.   Defendant's actions constitute harassment and abuse of the Plaintiff given the amount of communications with Plaintiff after she told the caller to specifically stop calling. Fla. Stat. § 559.72(7).

30.   Plaintiff has retained the undersigned counsel for the purposes of pursuing this matter against Defendant and is obligated to pay said counsel a reasonable fee for their services. The FCCPA provides for an award of attorney's fees should Plaintiff prevail in this matter. Fla. Stat. § 559.77(2).

**WHEREFORE**, Plaintiff requests that the Court enter judgment in favor of the Plaintiff and against Defendant for damages, attorney's fees, litigation expenses and costs of suit, and such other relief or further relief as the Court deems proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: August 7, 2015                    Respectfully submitted,

                                         */s/ Seth M. Lehrman*
                                         Seth M. Lehrman (Fla. Bar No. 132896)
                                         Email: seth@pathtojustice.com
                                         FARMER, JAFFE, WEISSING,
                                         EDWARDS, FISTOS & LEHRMAN, P.L.
                                         425 North Andrews Avenue, Suite 2
                                         Fort Lauderdale, FL 33301
                                         Telephone: (954) 524-2820
                                         Facsimile: (954) 524-2822

                                         Attorney for Plaintiff